Mr. Carpenter, whenever you're ready. May it please the Court. We're asking you to reverse the sentence in this case for two reasons. First, North Carolina common law robbery is broader than generic robbery because it extends to a snatching offense that involves only de minimis force. And second, even aside from the generic problem, the offense cannot qualify under Shell because it cannot be linked to any prong of Section 4B1.2's text. I'll start with the decision in Shell because it sets forth the rule of law that governs the analysis in this case. At page 345, the Court explains there that Section 4B1.2 contains a carefully reticulated definition of crime of violence to which this Court must adhere. What that means is that an offense can qualify through the commentary only if it can be linked to one of the prongs of the textual definition. Here we know from the decision in Gardner that this offense cannot be linked to the force clause, and we know from the decision in Johnson that the residual clause is void, and indeed the government concedes that it is. So as a result, the offense cannot be linked through the residual clause either. Have you had a chance to look at Breckler? I do not believe I have. Yeah, I don't. The Supreme Court's taken cert. Oh, Beckles. Beckles, sorry. Yes. Beckles. Yes, I'm very. Well, why should we wait for them to decide Beckles if I could just read this little tiny print because I'm getting old. No, I'm very familiar with Beckles. And the Court should not wait for Beckles for two reasons. First is that we have no real reason to believe Beckles is actually going to reach the issues that are present in this case. We have a lot of cases in the same posture. Well. It may. Fair enough, it may. Do you concede that it may? Oh, I absolutely concede that it may. But the reason it may not is that the primary issue there is retroactivity, and there are tons of cases that are being held in the post-conviction context on the retroactivity question. That's not an issue here because we're dealing with a direct appeal where this issue was preserved below. If the Court accepts the government's argument on retroactivity, the Supreme Court will not reach these issues. The second reason not to hold this case for Beckles is that we have no idea when Beckles is going to be decided. It could well not be resolved until June. And if the Court waits in this case until after June to decide it, it would deprive Mr. Haynes of any meaningful relief because he is at a situation where his properly calculated guidelines range, in our view, is 21 to 27 months. He's already served approximately 26 months, and that's not counting good time credit. So we believe as soon as this Court issues a decision, and that's why we've moved to expedite, we believe as soon as this Court issues a decision, if it agrees with us, he will be ready for a time served release. Okay. I take you in, and that's a fair comment. Have you had a chance to read the government's brief on Beckles? I have. So what do you have to say about the last three pages of the government's brief on Beckles? So the last three pages of Beckles, I believe you're referring to the part where they say that generally in a vagueness challenge we rely on the authoritative guidance first. Indeed. They made the exact same argument in Johnson and Lost. That's what I have to say about it. They cited the same cases in Johnson and Lost. And Justice Scalia said in the opinion for the Court there that in this situation, this language is so unworkable that it is vague in all of its applications. The Court in Johnson had the opportunity to rely on authoritative guidance and authoritative interpretations of the residual clause. There are all kinds of situations where everyone agreed that the residual clause covered certain crimes. But we know it wasn't a sentencing guidelines case, right? Sorry? Johnson wasn't a sentencing guidelines case. Oh, no. It wasn't. So we have a little different situation here when the commission is the authoritative. It just struck me as really you're telling me that Johnson they rejected the same argument but it couldn't have been the same argument because it wasn't a sentencing guideline. I agree. Not the identical argument, but they did reject. What the government argued there was that vagueness is more of an as-applied type of thing rather than a vague in all of its applications. And Justice Scalia clearly rejected that principle. Did the Supreme Court grant cert? What did the Supreme Court grant cert on? So there are three issues in that. Did it grant cert on? It granted cert on all of them. Well, then presumably it's not clearer than daylight that Johnson controls. Oh. I mean, it's at least open to questions. That issue is back before the Supreme Court. Yes. It's absolutely before the Supreme Court. And if the post-conviction, if the petitioner in Beckles can get past the retroactivity point, then the Supreme Court will decide the vagueness issue and the commentary issue. Right. We think that the commentary issue is controlled by Stinson. So I think that's the other part of the response to the last three pages of the government's brief. I don't understand how it could be controlled by something that's been called into question. Or at least the Supreme Court is going to hear argument on. That's the problem I'm having. So our argument is, you know, when I point the court, maybe I could step back and point the court to the Seventh Circuit's decision in Hurlburt and the Seventh Circuit's companion decision in Rollins where they address the same thing. They say in those opinions, look, the Supreme Court's granted cert in Beckles, but we're going to go forward in these cases because we don't know how many of these issues Beckles is going to resolve, and we don't know when Beckles is going to be decided. And I thought that was a fair argument until I started reading the government's brief, because now it seems to me we have the government's brief in Beckles that it is Beckles, right? I've got the name right now. It is Beckles. It is Beckles. What you don't have yet is the reply brief of the petitioner. Right, we don't. You know, so it's just as odd to be waiting for those things when you have your And I know you want your case to be decided here, but if we can't conclude that you're right, I don't know that you want it decided right now. Well, fair enough. So you want us to decide the case if we agree with you? I want you to decide the case either way, and, you know, if you disagree with us and the Supreme Court agrees with us, then, you know, we'll be able to appeal for cert and get it sent back down. My point is that this court should weigh in on the issue. If it agrees with us, Mr. Haynes will get his relief and the government can seek cert if they wish to. If you agree with the government, we can seek cert if we wish to. I think that, as the Seventh Circuit said in Hurlburt and Rollins, there's no good reason to wait on Beckles since we have so little idea of what the Supreme Court is actually going to decide. It is always true. It is always true. But pointing out, the argument relevant to the commentary is the last three pages of the government's brief, which is something like 45 pages. All of those very strong arguments that they think are the best that they put first go to retroactivity. If the court agrees with the government on all of those arguments, it never touches the last three pages of the brief. I would say those three pages were at the end of the brief for a reason, and the government wants to win and thinks it will win on the first issues. Okay. Well, rather than – I mean, I think we're going to decide whether we're going to hold it or not. So assuming that this is the government's position with respect to this issue, what do you have to say about it? You first said you look at the Johnson case. But I do not think Johnson controls with respect to that issue. I think you could find the way you did in Johnson and adopt the government's position in these last three pages in Beckles. I think the – So tell me what argument you make there. So if you disagree with the vague and all applications that, you know, the Court said in Johnson, you think that doesn't apply in the guidelines context, I think the problem you have here is that once the residual clause is voided, you have no text remaining for which the commentary can be linked. So the – Well, the beginning of the guideline, what does it say? Do you have the guideline in front of you? Yes. So what we are talking about is the residual clause, which is A2. Right. Well, it says – the guideline says the term, crime of violence means any offense under federal or state law punishable by imprisonment for a term exceeding one year. That. That. And then A1 and A2 are the two exclusive means by which that term is defined. So to qualify as a crime of violence, and that's what this Court said in Shell, you have to satisfy one of those two, A1 or A2. Right. Our view, I think Gardner resolves it doesn't get in under A1. A2, it doesn't get in under the four enumerated offenses. So the only thing left is the residual clause, which is the exact same 14 words that the Supreme Court struck down as unconstitutionally vague. Is it unconstitutionally vague because they didn't have – they didn't involve enumerated offenses? I'm sorry, I don't think I follow that question. Well, it was vague because those things you couldn't tell how close they were to the enumerated offenses. And that's the – What would be included and what wouldn't. But the body that is controlling with respect to what the guidelines means tells us that in the commentary. Well, the problem with that is going back to Shell. I think that's the argument. What these mean. And maybe that's a good point to jump off for a moment onto the generic robbery question. Because what we're talking about here is assuming that this North Carolina robbery qualifies as robbery as that term is used in the commentary, then maybe you can get in through that way. The problem is, in our view, North Carolina common law robbery is broader than generic robbery as the Commission used that term. Because when you look at the – we point to two things there, the Lefebvre Treatise and the Model Penal Code. The government cites the Lefebvre Treatise in its response brief. But when you look at Lefebvre, he points out that there is a divide in authority. The great weight of authority, he says, the majority of jurisdictions exclude a snatching offense from robbery. They treat it as the lesser offense of larceny. He points, as an example of that, to the Lear case in Arizona. I would invite the Court to compare and contrast the Lear case in Arizona with the Chance case in North Carolina. And that's a comparison we made in the reply brief. The facts, as I see them, are identical. In Lear, the defendant ripped a bag of silver out of the victim's hand. In Chance, it instead was a carton of cigarettes. In Lear, the Arizona court applied the majority rule and said, that's not a robbery. That's the lesser offense of larceny. The North Carolina courts, in Chance, applied the opposite minority rule and said, no, that's still enough. And so for that reason, we think it doesn't qualify as robbery. Now, the Commission, if it wanted to include this kind of de minimis force offense in the commentary, it easily could have listed the offense of larceny from the person, which is the way most states categorize the conduct that was at issue in the Chance case. So if you agree with us that it's outside the definition of generic robbery, then maybe that's a way that you can resolve this case without getting into these more complicated issues that are pending before the Supreme Court in Beckles, because that's kind of the logically antecedent question before we deal with the meaning of the commentary. So I would invite the Court to consider resolving the case in that manner. Do you have a – you know, we all the time are talking about what state statute, whether it is, in fact, when there were enumerated offenses, whether it constitutes one of those offenses. But do you have any cases that go to whether a state statute fits within the commentary's making of a designation of a crime? I'm just not familiar. I just don't – I've never seen one before. I would have to think for a second. I know that Henriquez applies that sort of generic approach in the context of burglary of a dwelling, although it's listed in A2 rather than in the commentary. Right. My understanding is that the Court has generally followed that. Peterson, actually, is one good example. United States v. Peterson is a case from 2011 or so. It was not – I don't know that it was cited in the briefs, but it involved the offense of North Carolina manslaughter. And the Court evaluated it under the commentary. It defined the generic version of manslaughter as requiring – I don't remember the exact details, but anyway. But that's true. Compared and contrasted. And it is cited in the briefs because it does something similar to what I would ask the Court to do here, which is it preserves the distinction between what the Commission included in the commentary was manslaughter. It didn't include the lesser offense of negligent homicide. And so Peterson looked at the North Carolina law and said, well, what North Carolina is calling manslaughter looks much more like what the rest of the world calls negligent homicide. Therefore, it's outside the generic definition and doesn't qualify. And the second point I would add on, in addition to the LaFave Treatise, on the generic meaning of robbery is the model penal code. We cited it in the commentaries at some length in the opening brief. And I agree with the government that the majority of states do not follow the exact formulation that the model penal code sets out in terms of requiring injury. Some do. It's a minority of 11 or 12, I think. But the majority of states, as LaFave illustrates, do accomplish the same point, the same outcome, which is to exclude these de minimis force offenses. And the commentaries in the model penal code explain why that's so important. Because robbery is a much more serious offense than these larceny offenses. And so we need to draw a clear line between these de minimis force snatching offenses on the one hand, which are not especially serious, and robbery offenses on the other hand, which are. And that's consistent with North Carolina's treatment of robbery as an offense that is fairly low on the spectrum. It carries only around 10 months or so, and that can be entirely suspended, which is in contrast to the much more significant penalties for the statutory robbery offense in the state. So your argument has to be that you can commit common law robbery with lesser degree of force than generic definition? That's exactly right. And, again, we point of support to that through the LaFave Treatise, which says the great weight of authority is that these snatching offenses, like the one in Lear in Arizona, are larceny, not robbery. North Carolina, in the chance case that was relied upon in Gardner, follows what is the minority rule. And so that, again, resolving it that way would avoid some of the stickier issues with respect that are pending in Beckles. Thank you. Thank you. Well, Ray, there's lots to talk about here. There is. In contrast to my earlier visit to the podium this morning, I expected to answer a few more questions this time. May it please the Court. In there, when you're at some point, and I'm not trying to direct your argument, I would like for you to talk about the Peterson case. Sure. Peterson did address and confirm that when this Court is interpreting the commentary or determining whether or not a state's offense qualifies as the offense, the enumerated offense in the commentary, the Court applies the generic definition of that offense. So I don't think that there's any real authority for going outside of the generic definition. But I don't think that's a problem for us, actually, in this case, notwithstanding Gardner and notwithstanding the chance decision, because North Carolina's definition of generic robbery is on all, I mean, North Carolina's definition of robbery is at least as narrow as generic robbery. North Carolina has three sections in the code. There's robbery with a dangerous weapon. There's common law robbery. That's not actually in the code, but the punishment provision is. And then there is larceny from a person. So North Carolina actually does have three levels, and the snatching offense is larceny from a person. And you're relying on what for that? That's just the general statutes. Does the statute refer to the common law robbery? The statute has the penalty provision for the common law, and it does, yes. So it creates a penalty for common law robbery. It does, Your Honor, yes. Does it recite the common law robbery definition? It does not. It does not recite the definition, but it provides for a penalty. And then there's the higher level of robbery with a dangerous weapon, and then there's a lower level offense of larceny from a person. I will acknowledge, because I have no choice but to acknowledge that chance is a close case. It is also an unpublished North Carolina Court of Appeals decision. But it also involved physical force of pushing a hand away. And I think that this notion that we have a distinction between so we have both by violence or fear is the language in North Carolina, and that is entirely consistent with the generic definition. And for that generic definition, before I go further into force and violence and fear, I note that every circuit, there's a number of circuits that are cited in our brief, the 8th Circuit, the 11th Circuit, the 9th Circuit, the 5th Circuit, have all arrived at a consistent understanding of what generic robbery is. And that is the taking of something through intimidation or fear. And the intimidation is enough intimidation that the person fears bodily injury. But I guess part of what concerns me about the way that we've been thinking about these robbery cases is that there's a division between force and violence on the one hand and intimidation. To me, it's much more of a continuum. You may not use that much force in pushing a hand away, but there's also intimidation that's used in that moment that, you know, you better move away or more violence will ensue. So North Carolina's, even with chance, and I would respectfully suggest this Court should recognize that that is an unpublished decision, and I don't think that it should then determine what the limits of North Carolina robbery are. What's unpublished mean in North Carolina Court of Appeals? I haven't looked at the, I mean, it's traditionally one is not permitted to rely on it as binding precedent. This Court did. This Court? In Gardner, this Court looked at chance and considered that and said yes. But that was a different question. That was whether or not it satisfied the force clause. And that's different from whether or not it qualifies as generic robbery, particularly where the state has set up levels of robbery. And it substantially corresponds, North Carolina's definition, with that in most states, as defined and recognized by the different circuits that have looked at what generic robbery is. So where, in what cases does the Court do that? I said it. Oh, I'm sorry, Judge Motz. You mean in terms of designating different levels? Yes. That's in the statute itself. Okay. And where, what, I guess what I'm asking you is you seem to suggest chance is wrong. So what's the contrary law? It's not, it's just that, so when Gardner and as we look at what North Carolina, how far do we go in North Carolina? What can constitute robbery? Right. The outer case that was identified by this Court in Gardner was chance. That was the least amount of violence. But what I'm suggesting is that's one case, it's an unpublished decision, and you have the vast majority of cases in North Carolina are going to conform with generic robbery. They're cases that require violence because there is either violence or intimidation sufficient to put one in fear of bodily injury. And we have larceny from the person, which takes care of the pickpocket snatch cases. So whether chance was rightly or wrongly decided, I guess my point is that it is not representative of what North Carolina, how it defines generic. It defines its robbery offense because most of those cases require more violence than that. But even if we take chance and say, okay, it's there, we have to wrestle with it. We have someone physically pushing a hand off of a carton of cigarettes and then taking the cigarettes. It's not the same as just a snatch or a pickpocket where the person is not jostled. Even Lefebvre says, look, if you have to wrestle something away from someone, it is generic robbery. In other words, if there's any resistance, if there's an opportunity for resistance, it is generic robbery as opposed to the pickpocket where there's no chance. I would like to turn to the question of whether or not the commentary in this case in robbery, is that still a valid, does the commentary still hold any force post Johnson? And the government's brief in Beckles did a far better job than I did, not surprisingly, of presenting. They have more time. They do. Thank you for that recognition. More time, more people. For sure. But I think I did make the point, and it is partly there, which is Johnson didn't excise the residual clause. Johnson says it's void for vagueness in the context of the Armed Career Criminal Act, which does not include commentary. It did not say that residual, that language, everywhere it is used throughout the universe of legal doctrines, cannot be relied upon for any purpose. And I want to be clear about what the government's position is, because Mr. Carpenter said it is that it is void in all cases. The government's position is not that we cannot look to the residual clause to support the sentencing commission's judgment that robbery is a crime of violence. That residual clause language still exists. It didn't go away. And the sentencing commission has every right to look at the residual clause, as well as the force clause, as well as the enumerated offenses to inform what's a crime of violence under our own guideline. And the sentencing commission's interpretation to that is entitled to deference. And it determined that robbery is consistent with the text of the guideline. And that is not an unreasonable determination. I note that courts have differed on whether robbery satisfies the force clause. Some courts, the Ninth Circuit and the Tenth Circuit, have both held that it qualifies as extortion, that common law robbery offenses in other states meet the generic definition of extortion, even if they didn't satisfy the force clause.  And Shell was very different because Shell was looking at a particular North Carolina offense of second-degree rape and asking whether that qualified as a forcible sex offense satisfying the force clause. It's not saying those forcible sex offenses, is that a valid interpretation to consider those crimes of violence under the text. It wasn't addressing an entire category, an enumerated offense, that the commission determined qualifies as a crime of violence. And so in this case, we have a robbery, and I would respectfully suggest that Johnson says it excised it only for purposes of the Armed Career Criminal Act. I do think that Beckles could answer the questions in this case. And so I do believe that an abeyance is appropriate and probably the better course in terms of what this court should do with this case. I also think, however, that we went on the merits, as I've explained, both because of under the question of whether robbery, the commission's deference, the deference of the commission makes it appropriate for this court to hold that robbery could reasonably be considered a crime of violence. I note that robbery is sort of the crime, the category of crime that is most often considered a crime of violence under the guidelines. And the new guidelines recognize that by bringing it above the line. Yeah, I was going to ask you about that. Yeah, and the new guidelines recognize that by bringing above the line, but I don't believe that the commission's explanation of that guideline suggests that it believes that it. That that was necessary. Exactly. No, it simply says it makes it it's an easier application is the way that they describe the decision to put it above the line. If your honors don't have any further questions, we respectfully request that the court affirm the judgment of the district court. Thank you very much. Thank you. All right. So a few points in rebuttal. I want to start with the question of the fact that chance is unpublished. I think that isn't really relevant to the court's analysis, because if you look at Henriquez and the other categorical approach decisions from this court and Gardner reiterates the same point, what we're doing in this analysis is looking at whether there is a realistic probability that state law reaches an offense that is broader than the generic definition. I'm sorry. Let's say here we have we don't have we have way more than realistic probability. We have an absolute certainty. We know from chance that the state courts have affirmed a robbery. We're relying on chance for that proposition. So that makes chance relevant. And what I was I was simply going to ask if you can tell us what weight we can accord an unpublished decision. I'm just asking if you have any authority or clarity on that position. The best authority I have on that is the Gardner case, which relies on chance. Which we relied on. Right. And my understanding of why the court relied on it in Gardner is because the analysis here is asking the question, is there a realistic probability that the state courts will affirm robbery convictions for conduct that goes in Gardner was beyond the force clause. Here we're saying beyond the scope of generic robbery. And when you're asking the question of what is the probability of what the state courts will do, an unpublished appellate court opinion is strong evidence that, in fact, the courts will do that. Strong evidence because sometimes we say there is a possibility that this this is within not this statute, not this case. But it was within without any evidence. We think that that would work. Absolutely. So we have the unbanked decision in Aparicio Soria had 38 or 40 cases that Judge Wilkinson relied on in dissent that all involved actual physical force. But this court said, well, the fact that there are a bunch of published opinions that do involve force isn't relevant because you look at what is possible under the elements of the offense. Here the elements of the offense are defined broadly enough to include the snatching conduct, and we have confirmation of that in chance. I want to also respond to the notion that there is these staggered, there's larceny from the person in common law robbery. I agree there are those offenses, but larceny from the person is broader, much broader than just the snatching offenses where you take something out of another person's hand. Larceny from the person under North Carolina law extends to situations where items are taken from the presence of a person. So, for example, there's a Supreme Court case called State v. Buckham that affirms where the cashier opens the cash drawer or the defendant reaches in and takes the cash, makes no contact at all. So you're not looking at the generic offense of robbery? I'm not quite sure I am. I'm trying to understand the context of your argument. If there are three different categories, statutory categories, do you just militate to the lowest possible one? No. I guess I'm responding to Ms. Ray's argument, which was that, well, we know that she seemed to be suggesting that we have these three versions in North Carolina so we know that robbery is in the middle and it's the generic version. I'm asking you that question. Is that the context in which you're asking us to consider larceny from the person? Right. I'm asking you to consider that only to rebut the notion that the existence of larceny from the person doesn't preclude the existence of larceny from the person as a State of North Carolina offense does not preclude the possibility that I'm sorry. You're giving us this in contradistinction. You're saying we're not to reason that in contradistinction that robbery must carry a greater strategy. Right. She's reasoning that because the State has larceny from the person, common law robbery can't be larceny from the person. I think I understand. Okay. So let me turn then to a question about the commentary and deference. And let's see if, Judge Stunk, if you had a, okay. I'll turn to that because Ms. Ray is suggesting that we're saying that robbery is just out as a general matter and that we're throwing out the whole category. That's not what we're doing. We're saying that when you apply shell, these commentary offenses can stand only to the extent that they can be linked to the text. If you want to link robbery to the force clause, that's perfectly fine with us because when robbery is linked to the force clause, it therefore requires violent force. Right. We're saying robbery can't be linked to the residual clause because we believe that the residual clause is void for vagueness. And the government has conceded that sort of as an initial matter. So the government is sort of treating residual clause kind of like a zombie here. It's gone. The commentary erases the vagueness. That's the argument. And I disagree with it because I think. Let me try a different way of explaining why. Robbery will probably disagree with it too. It will absolutely disagree with it. And let me maybe make a different point as to why I think the commentary does not cure the vagueness. The reason is that if you look at shell and all of the now four circuits that follow the principle of shell, an offense can qualify under the commentary, through the commentary, only if it can also be linked to the residual clause. What that means is you still have to do, the court still has to do the residual clause analysis. So if you look at the decision in shell, the court relied, you know, first it said, no, it doesn't qualify under the force clause, and then it engaged in the residual clause analysis, which is the analysis that the Supreme Court, the exact same analysis that the Supreme Court in Johnson declared to be unworkable and nothing more than guesswork. And that's why it struck it down. Does the fact that the Sentencing Commission is putting the enumerated offenses in the text change anything? Going forward, certainly. Once those are in effect and we're getting cases that are sentenced under them, the residual clause is gone, then the court will do the classic, just the generic robbery analysis. And I think it's entailing that the commission said that Johnson raises the same concerns under the guideline and that it responded so quickly to change the issue going forward. Can I ask you to tell me one more time what the timeline is with respect to your client? Absolutely. He has served approximately 26 months, not counting good time. His revised range, in our view, would be 21 to 27 months. So we believe he's already at time served as soon as the court would decide it. The other thing I would add is that his current release date is scheduled for October of 2017 under his current sentence with the expectation that he will be to a halfway house by April or May of this year. So for him to get any meaningful relief, we'd ask the court to decide this case. Now, if the parties disagree with the outcome, we certainly will have the opportunity to seek certiorari in the Supreme Court. And you want us to decide even if we decide it against you? I don't see why not. My client wants relief now, and if he doesn't get it now, he gets it never. Well, it might be to the disadvantage of other clients. I'm here today on behalf of Mr. Haynes, and so I can only advocate for his best interests. Well, we thank you for your arguments. I think that you have a large audience here, and I bet it's mostly clerks, and they should know that these are two former Fourth Circuit clerks who always do a fine job. Thank you. I ask the clerk to adjourn court, and we'll come down and say it later.
judges: Diana Gribbon Motz, Robert B. King, Allyson K. Duncan